622 A.2d 298

Gloria Jean KRYSMALSKI, A Minor by her Parent and Natural Guardian, Eugene KRYSMALSKI, and Eugene Krysmalski, in his own right, and Eugene Krysmalski, Administrator of the Estate of Shirley Krysmalski, deceased

v.

Albert TARASOVICH, An Individual, and Grant Bar, Inc., A Corporation, and Paul J. Karanzas, Individually and t/d/b/a Parkview Cafe.

Appeal of Albert TARASOVICH (at 13).

Diane Marie KRYSMALSKI, A Minor by her Parent and Natural Guardian, Eugene Krysmalski, and Eugene Krysmalski, in his own right, and Eugene Krysmalski, Administrator of the Estate of Shirley Krysmalski, deceased

v.

Albert TARASOVICH, an Individual, and Grant Bar, Inc., A Corporation, and Paul J. Karanzas, Individually and t/d/b/a Parkview Cafe.

Appeal of Albert TARASOVICH (at 14).

David S. KRYSMALSKI, A Minor by his Parent and Natural Guardian, Eugene Krysmalski, and Eugene Krysmalski, in his own right, and Eugene Krysmalski, Administrator of the Estate of Shirley Krysmalski, Deceased

v.

Albert TARASOVICH, An Individual, and Grant Bar, Inc., A Corporation, and Paul J. Karanzas, Individually and t/d/b/a Parkview Cafe.

Appeal of Albert TARASOVICH (at 15).

Superior Court of Pennsylvania.

Argued Dec. 4, 1992.

Filed March 1, 1993.

William R. Haushalter, Pittsburgh, for appellant.

Edward J. Balzarini, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

 This is an appeal from judgments entered against defendant Albert Tarasovich ("Tarasovich"). After a trial

before the Honorable Patrick J. McFalls, a jury found Taraso-vich liable for plaintiffs' personal injuries. We affirm.[1]

On July 23, 1986, the three minor plaintiffs, Gloria, Diane and David Krysmalski, were waiting for their mother in the parking lot of a Giant Eagle supermarket near Pittsburgh while she was shopping. At the same time, Tarasovich was driving his vehicle in the parking lot, waiting to pick up a female friend who was shopping. Tarasovich was driving his car in what can only be described as a life-threatening and reckless manner: he was parked in the lot, started his car, backed into a vehicle forcing it into another, accelerated forward, hit several more cars, and finally crashed through a concrete barrier at the entrance of the store, striking the children.

Both Gloria and Diane suffered severe lacerations to their legs which required amputation of one leg from each of the girls. David suffered a laceration on his chin. Upon hearing a commotion, the children's mother, Shirley, ran to the scene, only to see her children horribly injured in the accident. The Krysmalskis brought a negligence action against Tarasovich. The jury awarded compensatory damages to the minor children in the amount of $7,000,000 to Diane, $5,000,000 to Gloria, and $35,000 to David. Shirley's estate (Shirley passed away before trial) was awarded $100,000 for a claim of negligent infliction of emotional distress. The trial court also awarded delay damages to the plaintiffs pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure.

1. On this appeal, we find it necessary to clarify the scope of *en banc* Superior Court review. This case is before us as a result of a petition for *en banc* consideration filed by counsel for Tarasovich. When defense counsel argued before the Court *en banc*, he stated that since it was he who requested reconsideration of the Rule 238 issues in this case, he was entitled to stand on the opinion of the original Superior Court panel which reversed the award of damages to the Estate of Shirley Krysmalski for negligently inflicted emotional distress. Therefore, counsel did not argue this issue. *En banc* consideration causes the original panel decision to be withdrawn. Therefore, defense counsel is not entitled to rely on it. Accordingly, when *en banc* consideration is granted, we review all issues as if the parties were presenting them to this Court for the first time. Below, we consider all claims appealed from the trial court.

Tarasovich raises four issues for our consideration: (I) whether the trial court should have granted a new trial based on Tarasovich's allegation that there was insufficient proof of Shirley's claim of negligent infliction of emotional distress; (II) whether the trial court should have awarded a new trial based on an allegedly prejudicial statement made by David Krysmalski during his testimony; (III) whether the trial court properly awarded delay damages against Tarasovich; and (IV) whether the trial court should have entered a remittitur or granted a new trial based on the excessiveness of the verdicts. We address each issue in turn.

■ Initially, we note that Tarasovich's post-trial motions regarding the Estate's claim for emotional distress damages aver that the Krysmalskis presented insufficient evidence in support of the emotional distress claim, such that the verdict was against the law. The appropriate remedy for such an argument, if successful, is judgment notwithstanding the verdict ("J.N.O.V."). *See Erkens v. Tredennick,* 353 Pa.Super. 236, 509 A.2d 424 (1986) (judgment N.O.V. may be entered only where no two reasonable persons could disagree that the verdict was improper). Nevertheless, Tarasovich's post-trial motions request a new trial.

Unlike a judgment not withstanding the verdict, a motion for a new trial does not test the verdict itself but the proceedings resulting in the verdict. The basis of the new trial is not that the judgment is unsupported by sufficient evidence, but that an alleged trial error affected the verdict.

*Waddle v. Nelkin,* 511 Pa. 641, 648, 515 A.2d 909, 913 (1986); *Dorn v. Stanhope Steel,* 368 Pa.Super. 557, 580, 534 A.2d 798, 810 (1987). "The decision whether to grant a new trial is within the discretion of the trial court, and that court's decision will be overturned on review only if . . . the court acted capriciously or palpably abused its discretion." *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985); *Houseknecht v. Walters,* 404 Pa.Super. 85, 590 A.2d 20 (1991). To determine whether a trial court's decision amounted to a palpable abuse of discretion, we must "examine the record and assess the weight of the evidence; not however, as the trial

judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." *Thompson* at 600, 493 A.2d at 673 (citations omitted). Where the record adequately supports the trial court, it has acted within the limits of its judicial discretion. *Id.* We find no basis for awarding a new trial in this case.

## I.

Tarasovich's first allegation of error is that the trial court erred by allowing the Estate of Shirley Krysmalski (hereinafter "Estate") to recover damages for negligent infliction of emotional distress. This argument has three prongs:

(a) Since Shirley Krysmalski failed to suffer physical harm in conjunction with her emotional distress claim, the Estate's negligent infliction claim must fail as a matter of law;

(b) the estate's negligent infliction of emotional distress claim fails as a matter of law because the Estate did not introduce medical evidence to substantiate the claim;

(c) Shirley Krysmalski did not witness the accident and did not become aware of it until after the fact, therefore the Estate failed to establish the sensory and contemporaneous observance necessary to establish a negligent infliction claim.

We find no merit to Tarasovich's arguments and affirm the award of damages to the Estate for negligent infliction of emotional distress.

Tarasovich's first argument is that the trial court erred by allowing the Estate to recover damages for negligently inflicted emotional distress. We interpret Tarasovich's first argument to be an allegation that this claim should not have been submitted to the jury and that the trial court erred by permitting it to so proceed. The most expeditious manner of addressing the claims presented under Tarasovich's first argument is to consider them out of the order set forth above. We will address I(c) first, then I(a), and finally I(b).

■ The third prong of Tarasovich's first argument is that Shirley Krysmalski failed to actually witness the injuries her children sustained in the accident, and that the negligent infliction claim therefore fails. We disagree. This accident occurred at the entrance to the grocery store. (N.T. 3/27/89, at 120, 121, 131.) The children were waiting outside of the store at the entrance for their mother, who was situated just inside the store facing the lot in the check-out line. (N.T. 3/27/89, at 446, 474, 483.) The lot was visible from inside the store. (N.T., 3/37/89, at 120.) Moreover, the jury was presented with evidence that Shirley Krysmalski did witness the injuries to her children. Officer Salvatore Crisanti, a security officer on duty at the time of the accident, testified that:

A: Well, when I seen the children laying on the ground and I had run right over to them, Then I could hear [Mrs. Krysmalski] start to scream in, like, the background there. And I looked up, and I saw Mrs. Krysmalski, and she had been standing there screaming. I guess, in a hysterical-type of state.

Q: Did you speak to her at any time at the scene that night?

A: No, I didn't.

Q: And how long did you observe her at the scene?

A: I know she was there. I was so busy with . . . children . . . that I didn't keep track of her.

Q: Do you know how she left the scene? ·

A No, I don't recall.

Q: So the time that you are observing her at the scene is while she was screaming hysterically?

A: She was quite upset during the interim period that the children where—from the time that they had been hit to the point where on their way to the hospital. And she probably did go with them at that point.

Notes of Testimony [N.T.], 3/27/89, at 124–125.

Nonetheless, Tarasovich finds grounds for a new trial in the fact that David Krysmalski testified that his mother was in the store at the time of the accident. (N.T., 3/27/89, at 486.) Conflicting testimony, however, is not cause for a new trial.

*Baldino v. Castagna*, 505 Pa. 239, 249, 478 A.2d 807, 812 (1984) ("[w]e have consistently held that a new trial should not be granted on a mere conflict in the testimony"). The jury reasonably found, on the basis of the testimony summarized above, that Mrs. Krysmalski was on the scene at the time of the collision. We will not disturb that finding. Moreover, this case is dissimilar from the cases cited by Tarasovich in support of his argument. The authority cited by Tarasovich involved family members who happened upon the scene of an accident involving a family member minutes later or were notified of the accident by third parties. *Yandrich v. Radic*, 495 Pa. 243, 433 A.2d 459 (1981); *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986); *Brooks v. Decker*, 512 Pa. 365, 516 A.2d 1380 (1986). In this case, the evidence at trial established a closer relationship between the occurrence and the claimant's observation. Accordingly, the cases Tarasovich cites will not afford relief.

█ Moreover, even if Mrs. Krysmalski was not on the scene at the exact moment of impact, she experienced a contemporaneous sensory observance of the accident. Even if Shirley Krysmalski was in the grocery store at the exact second of impact, she most certainly heard the crash in the parking lot, and knew that her children were at the scene of those events. This accident occurred at the entrance to the grocery store. (N.T. 3/27/89, at 120, 121, 131.) The children were waiting· outside of the store at the entrance for their mother, who was situated just inside the store facing the lot in the check-out line. (N.T. 3/27/89, at 446, 474, 483.) The lot was visible from inside the store. (N.T., 3/37/89, at 120.) Evidence presented at trial established that the sound of Tarasovich's vehicle crashing into other cars in the grocery store parking lot was audible from inside the store. (N.T., 3/27/89, at 119.) Diane Krysmalski testified that she and her siblings asked their mother if they could wait for her outside while she was in the checkout line at the front of the store. (N.T., 3/27/89 at 474.) This Court has held that visual apprehension of an accident involving a family member is not a crucial requirement in an action for damages for negligent

infliction of emotional distress. *Neff v. Lasso,* 382 Pa.Super. 487, 555 A.2d 1304 (1989), *alloc. denied* in 523 Pa. 636, 565 A.2d 445 (1989). In *Neff,* the complainant did not actually witness the tortious impact which eventually caused her husband's death. At the time of the impact, she was standing in their home looking out of the kitchen window. She saw her husband's automobile coming down the street toward their home and saw the tortfeasor speeding directly behind him. Mrs. Neff heard the crash between the two vehicles. She then immediately ran out of the house and viewed her husband lying unconscious on the front lawn. As a result, she suffered severe emotional distress. The tortfeasor claimed that the lack of appellant's actual visualization of the accident precluded recovery under Pennsylvania law.

We found, after a thorough examination of *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), and its progeny, that in considering the "sensory and contemporaneous observance" requirement set forth in *Dillon,* the Supreme Court focused upon whether the emotional shock was immediate and direct rather than distant and indirect, and not upon the sense employed in seeing the accident.[2] After reviewing cases from other jurisdictions which allowed recovery in similar situations, we found that:

> to deny appellant's claim solely because she did not see the precise moment of the impact would ignore the plain reality that the *entire incident* produced the emotional injury for which the plaintiff seeks redress, and would be contrary to the very policy and purpose of the Court in *Sinn* when it abandoned the "zone of danger" rule, i.e. eliminating arbi-

---

**2.** The factors referred to by the *Sinn* Court, first set forth in *Dillon v. Legg,* 68 Cal.2d 728, 739, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968), are the following: (1) whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. These factors were adopted by the Pennsylvania Supreme Court in *Sinn v. Burd,* 486 Pa. 146, 170, 404 A.2d 672, 685 (1979).

trariness. Therefore, we conclude that "sensory and contemporaneous observance" is not limited to visual sensory perception ... Succinctly, it is not the source of the awareness, rather, it is the degree of the awareness arising from all of the individual's senses and memory which must be determinative of whether plaintiff's emotional shock resulted from a "sensory and contemporaneous observance" of the accident.

*Neff,* 382 Pa.Super. at 506, 555 A.2d at 1314 (emphasis in original). The evidence presented at trial establishes that Shirley Krysmalski contemporaneously observed the accident. Thus, Tarasovich's argument I(c) fails.

In support of argument I(a), that the claim for emotional distress fails because there was no proof of physical harm, Tarasovich relies on Section 436A of the Restatement (Second) of Torts: *Negligence Resulting in Emotional Disturbance Alone,* which provides:

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

Tarasovich then directs this Court to cases which apply Section 436A to bar recovery for negligently inflicted emotional distress absent evidence that plaintiff has also suffered physical harm. *Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. 8, 589 A.2d 1143 (1991); *Wall by Lalli v. Fisher,* 388 Pa.Super. 305, 565 A.2d 498 (1989), *alloc. denied* in 526 Pa. 636, 584 A.2d 319, 321 (1990); *Houston v. Texaco, Inc.,* 371 Pa.Super. 399, 538 A.2d 502, *alloc. denied* in 520 Pa. 575, 549 A.2d 136 (1988); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981). The above cases, however, are distinguishable from this case. In *Abadie,* plaintiff's complaint contained no averment of physical harm, illness or injury resulting from tortious conduct. In *Wall,* defendant's motion for summary judgment was granted and sustained by this Court because plaintiff's complaint did not allege physical

harm. In *Houston*, the physical harm alleged by plaintiffs was only that they were "upset and bitter" because defendants caused gasoline to be spilled on their land. In *Banyas*, there was simply no allegation of bodily harm.

■ We must determine whether the trial court committed error which warrants a new trial. Our Supreme Court has instructed that "the driver of a vehicle in Pennsylvania owes a duty of care to all motorists and pedestrians in his immediate zone of danger and to any bystander who experiences a contemporaneous observance of an injury to a close relative." *Mazzagatti*, 512 Pa. at 279, 516 A.2d at 679. Therefore, a driver's conduct is the proximate cause of physical or psychic injury to a plaintiff in that situation. *Id.* When the Supreme Court of Pennsylvania abandoned the physical impact rule in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), the Court stated that:

> [i]t is fundamental to our common law system that one may seek redress for every substantial wrong. The best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct.

*Niederman* at 403, 261 A.2d at 85. In *Mazzagatti*, the Supreme Court held that:

> the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system. The negligent tortfeasor inflicts upon this bystander an injury separate and apart from the injury to the victim. Hence the critical element for establishing such liability is the contemporaneous observance of the injury to the close relative.

*Mazzagatti*, 512 Pa. at 279, 516 A.2d at 679. As discussed above, testimony illustrated that Shirley Krysmalski contemporaneously observed the devastating traumatic amputations suffered by her daughters. As stated by the Supreme Court in *Mazzagatti*, the critical element in a cause of action for negligent infliction of emotional distress is establishing that the plaintiff contemporaneously observed the accident. Therefore, there is no trial court error for permitting this claim to proceed before the jury. The Supreme Court in *Sinn*

held that "psychic injury is capable of being proven despite the absence of a physical manifestation of such injury." *Sinn,* 486 Pa. at 160, 404 A.2d at 679. In *Love v. Cramer,* 414 Pa.Super. 231, 606 A.2d 1175 (1992) (Cirillo, J., dissenting), a panel of this Court recognized that in the context of emotional distress, the amount of harm that must be alleged is unclear. Although Shirley Krysmalski was not available to testify on her own behalf at trial, there was evidence that her observation of the accident affected her noticeably and severely. David Krysmalski testified that the accident was too much shock for his mother to bear and that he had never before seen her in the state she was in after the accident. (N.T., 3/27/89, at 485.) Eugene Krysmalski testified that his wife was unstable and distraught when he arrived at the hospital after being notified of the accident. (N.T., 3/27/89, at 434.) Officer Salvatore Crisanti testified that Shirley was in a hysterical state when he arrived on the scene. (N.T., 3/27/89, at 124–125.) On the basis of this evidence, the jury returned a verdict which we are not entitled to upset. We do not require an abundance of evidence for a jury's decision; there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury verdict. *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871 (1988).

Therefore, Tarasovich's argument that the Estate's claim for damages for emotional distress must fail as a matter of law is meritless. Shirley Krysmalski's observation of the devastating injuries suffered by her children support the jury verdict for the Estate and the denial of Tarasovich's motion for a new trial. Tarasovich will not obtain relief on his argument I(a).

■ Argument I(b) fares no better. Tarasovich argues that the Estate's failure to present medical evidence of Shirley Krysmalski's injuries is fatal to a claim for negligent infliction of emotional distress. Therefore, he argues, the evidence was insufficient to substantiate the claim for negligent infliction of emotional distress. This argument fails for the simple reason that medical evidence is not required in an action for damages

for negligent infliction of emotional distress. Our Supreme Court has held that where a bystander witnesses injury to a close relative, the contemporaneous observance and close relationship guarantee the veracity of the claim. *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987). The medical proof requirement was intended to buttress the requirement of proof of outrageous conduct in the context of intentional infliction of emotional distress claims. *Id.* In contrast, the *Kazatsky* Court noted that it "endorsed an objective standard for the recovery of damages which limited recovery for serious mental distress to situations where a reasonable person normally constituted would be unable to adequately cope with the mental distress engendered by the circumstances of the event." *Id.* at 193–94, 527 A.2d at 993. The facts presented at trial satisfied that objective standard. The cases Tarasovich relies on to buttress his argument in this respect involve the tort of intentional infliction of emotional distress. Our research discloses no Pennsylvania case which requires medical evidence to support a negligent infliction claim. Therefore, a new trial is not warranted on this basis and we affirm the trial court's denial of Tarasovich's motion for a new trial on this issue.

## II.

Tarasovich's second argument is that a new trial should have been awarded as a result of a statement by David Krysmalski at trial. The basis for this argument is the following passage from the trial record:

Q: Something else that you want to tell us about this event?

A [David Krysmalski]: Yes, I just wanted everybody to know that this helped kill my mother.

(N.T., 3/27/89, at 487.) Immediately after the statement was made and defense counsel objected to it, the trial court rendered a cautionary instruction:

THE COURT: The last answer that was given by this witness on redirect is a statement of opinion which this witness is not qualified to give. And you will totally disre-

gard that statement and that opinion. And I will strike it from the record.

(N.T., 3/27/89, at 489.)

In light of the fact that Shirley Krysmalski's death was not an issue for the jury's consideration, as well as the prompt delivery of a clear cautionary instruction, we find neither abuse of discretion nor prejudice which warrants a new trial. *See Thompson v. Anthony Crane Rental, Inc.*, 325 Pa.Super. 386, 473 A.2d 120 (1984).

## III.

Tarasovich contends next that the trial court improperly assessed delay damages pursuant to Pennsylvania Rule of Civil Procedure 238. He contends that he is not accountable for delay damages as he is "indigent" under *Berry v. Anderson*, 348 Pa.Super. 618, 502 A.2d 717 (1986). We disagree.

Tarasovich was insured by Erie Insurance Company ("Erie"). His policy provided for bodily injury coverage with limits of $100,000 per person and $300,000 per occurrence. During July of 1986, Erie tendered settlement offers of $100,-000 each to Gloria and Diane Krysmalski, $15,000 to David Krysmalski, and did not offer any money to Shirley's estate, claiming that any emotional distress claim was meritless. At no time did Tarasovich offer any contribution from his personal assets to the settlement fund. The parties never reached a settlement. The matter went to trial, and, as we have mentioned, verdicts were returned in the amounts of $7,000,000 for Diane, $5,000,000 for Gloria, $35,000 for David, and $100,000 for Shirley's estate. Since the verdict exceeded the offers by over 125%, the judge awarded delay damages to Diane, Gloria, and David.[3] The combined amount of delay damages exceeded $3,000,000.

The crux of Tarasovich's appeal on this issue concerns whether he was under a duty to contribute personally to the

---

3. Shirley's estate was not awarded delay damages. Whether the Estate was entitled to such damages is not before us.

settlement. He argues that his insurer, Erie Insurance Group, offered as a settlement all available policy limits under his automobile liability policy. This fact, coupled with Tarasovich's insistence that he had no funds to contribute to the settlement rendered him "indigent" under *Berry.* He also argues that even if he was under a duty to contribute, *Berry* precludes imposition of delay damages since an offer of his assets could not have added enough to avoid application of the Rule. Finally, he argues that application of Rule 238 in this case would be unconstitutional under the equal protection, due process, and excessive fines clauses of the Pennsylvania and United States Constitutions. We find all of these arguments meritless.

Our analysis begins with the background of Rule 238. Delay damages are available at the request of all plaintiffs in civil actions seeking monetary damages against a defendant who is found liable for personal injuries. Pa.R.C.P., Rule 238(a)(1), 42 Pa.C.S.A. A defendant may exclude the assessment of damages for periods of time after which he has made a written offer of settlement which is not exceeded by 125% of the verdict or for periods during which plaintiff has caused the delay. Rule 238(b)(1); *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986). Although the rule has been amended since it was first adopted, its purpose has remained undisputed:

> [Rule 238] clearly reflects a primary desire to encourage pre-trial settlement ... By tolling the running of interest, this provision demonstrates the prominent goal of fostering early settlement. Undeniably, this rule serves to compensate the plaintiff for the inability to utilize funds rightly due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts.

*Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 59, 436 A.2d 147, 151 (1981), *appeal dismissed sub. nom., Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982); *Berry v. Anderson,* 348 Pa.Super. 618, 502 A.2d 717 (1986); *see, Craig, supra,* 512 Pa. at 65, 515 A.2d

at 1353 ("We do not overrule the rationales of *Laudenberger*, for they have vitality of their own in the context of the ends sought."). Since the rule's purpose is meant to alleviate court congestion by promoting earlier settlement of claims, "the purpose in no way is to punish a defendant." *Schrock v. Albert Einstein Medical Center*, 527 Pa. 191, 196, 589 A.2d 1103, 1106 (1991).

To comply with the rule, a defendant must offer a settlement before trial in order to avoid delay damages after the verdict. In *Berry*, however, we recognized an exception to this otherwise steadfast requirement. We held that where a defendant is precluded by his impecunious condition from contributing to a settlement offer, he will not be expected to do so:

> We hold that a plaintiff shall not be awarded damages for delay pursuant to Pa.R.C.P. after the date of the defendant's offer when the court determines that the offer was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more.

*Berry, supra,* 348 Pa.Super. at 627, 502 A.2d at 722.

In *Berry,* plaintiff sued defendant for personal injuries. Defendant was insolvent and had applicable insurance coverage of $100,000. Defendant offered the policy limits in settlement, which was refused by plaintiff. When the jury returned a verdict for $2,000,000, the court assessed delay damages of over $500,000. In order to avoid delay damages, defendant would have been required to offer assets which she simply did not own. We recognized that requiring defendant to offer non-existent assets would serve no purpose of Rule 238:

> By adopting appellant's position, we would not penalize indigent defendants for offering the full amount of their available resources. And plaintiffs would be able to view settlement negotiations with an eye toward the financial capabilities of the defendant. Such plaintiffs may be loathe to undertake the time, expense and emotional drain of litigation if an impecunious defendant is all that awaits them at the end of their labors.

While the literal language of the Rule fails to specify that a defendant who makes a reasonable settlement offer must first possess the assets to satisfy the offer, logic and common sense supply that prerequisite. A result in which a defendant would be required to make an offer he could not possibly pay would neither promote the goal of Rule 238 or generate respect for the judicial system.

*Id.* at 625, 502 A.2d at 720–721.

 This passage demonstrates that a defendant must offer all assets that he has available for payment in order to escape liability for delay damages. Whether defendant has tendered all that he has available is determined by the trial judge at an evidentiary hearing. *Id.* at 621, 502 A.2d at 718. Since the trial court's findings are inherently factual, we will only reverse if we find an abuse of discretion. *See, Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985) (trial judge sitting as fact-finder will not be reversed unless he abuses his discretion). Furthermore, a defendant opposing the imposition of delay damages has the burden of showing that he is entitled to relief. Pa.R.C.P. 238, Explanatory Comment–1988, 42 Pa.C.S.A. In this case, the trial judge found that Tarasovich could have supplemented the settlement offer, but chose instead to transfer realty to a relative for no consideration. Plainly stated, Tarasovich owned additional assets which he chose to squander, knowing that they may eventually be subject to execution.

 Tarasovich claims first that he was insolvent within the meaning of *Berry.* He argues that Erie offered Tarasovich's policy limits as a settlement. He further claims, as he did at the trial court's evidentiary hearing, that he owned a few rental properties, all of which were heavily encumbered by mortgages, that he had sold certain other rental properties, that he was unemployed for twelve years prior to the suit, and that all rent from his current rental properties are applied to satisfying the mortgage payments. Nonetheless, the trial court found that Tarasovich could not seek the protection afforded by *Berry.* It found as fact that Erie did not offer the policy limits. It also found that one year after the accident,

Tarasovich transferred over $60,000 of rental properties to his son for a consideration of ten dollars. We agree that Tarasovich is not "indigent" under *Berry*.

The fundamental notion underlying *Berry* is that a defendant must offer all assets available to him in order to avoid imposition of delay damages. Therefore, before seeking *Berry's* shelter, a defendant must offer, at least, any insurance coverage he may have procured. The parties argue strenuously concerning whether Erie offered, during its negotiations with plaintiffs on Tarasovich's behalf, the policy limits under Tarasovich's insurance policy. Whether Erie breached its contract with Tarasovich, however, or acted in bad faith during negotiations is a matter for another day, since Erie is not a party to this lawsuit. With this limitation in mind, we review Tarasovich's contention that he offered, and had offered on his behalf, "all available assets."

Both parties concede that Tarasovich's insurance policy contained a limit of $100,000 per person or $300,000 per occurrence. During the initial settlement negotiations, Erie, on Tarasovich's behalf, offered $100,000 to each of the daughters. Plaintiffs rejected these offers, apparently because Erie "unreasonably" demanded a release of all claims against Tarasovich.[4] Erie subsequently filed an action in equity, naming plaintiffs and Tarasovich as defendants.[5] On January 4, 1989, the judge assigned to the equity suit denied Erie's motion to deposit $200,000 in court for the purpose of tolling any accruing interest under Rule 238. This denial was based on Erie's contention that the $200,000 would "complete the obligation of Erie Insurance Exchange to the aforesaid minors and their parents as to their derivative claims." Erie's Petition to Deposit Monies into Court, ¶ 16, R.R. 259A. During subsequent negotiations, Erie offered $100,000 each to Gloria and Diane, plus $15,000 to the injured son. Erie made no offer to Shirley's estate, contending that it had no cognizable cause of action. The Krysmalskis maintain, and the trial court found

4. The record does not disclose the actual terms of any proposed releases.

5. No aspect of this equity action is in front of this Court at this time.

as fact, that this combined $215,000 settlement offer represented the last, best offer and was conditioned upon the Krysmalski's release of all claims against Tarasovich. Krysmalski's brief, at 25; Trial court opinion, at 16.

As a result, the Krysmalskis rejected this offer. On January 27, 1989, however, the equity court allowed Erie to deposit $200,000 into court, without the former conditions, to toll Rule 238 damages as to each of the daughters. Tarasovich now claims that he is not responsible for delay damages to Gloria and Diane for periods after January 27, because they rejected the offers of the $100,000 per person limits. This argument is misleading. First, it entirely ignores the fact that David Krysmalski was made an inadequate offer of $15,000 in light of the $35,000 verdict entered in his favor.[6] Thus, delay damages were properly awarded to David on that basis.

Second, and more importantly, even assuming (without deciding) that Erie offered Gloria and Diane the policy limits under the contract, the trial judge found that Tarasovich had personal assets which he transferred to his son for nominal consideration after the accident. Thus, he cannot seek the protection that *Berry* provides impecunious defendants. We hardly need authority for the proposition that the law will not tolerate eleventh-hour transactions for little or no consideration when those transactions are intended to help the owner avoid his obligations. *Berry*'s purpose is to achieve "more equitable results" by forgiving those defendants who in good faith cannot offer a reasonable settlement as required by Rule 238 due to their perilous economic circumstances. 348 Pa.Su-

---

6. As we have noted, Erie also made an inadequate offer to the Estate of Shirley Krysmalski in light of the $100,000 verdict in her favor. The trial court assessed no delay damages against Tarasovich in favor of the Estate and this decision was not appealed. We therefore offer no opinion regarding whether the Estate was entitled to delay damages.

Furthermore, we offer no opinion regarding whether Erie was required to offer the $300,000 per occurrence limits if, in fact, it sought releases from all of the plaintiffs. We only conclude that the son was entitled to delay damages, assessed against Tarasovich, as a result of the inadequate offer made to him. Moreover, as we discuss, *infra*, even assuming that the daughters were offered the full policy limits, Tarasovich cannot escape delay damages under *Berry* because he made no additional offer of personal assets available to him.

per. at 618, 502 A.2d 717. However, those who seek equity, as the maxim goes, must do equity. Defendants who squander assets in an effort to avoid their duty to negotiate a settlement, escape imposition of delay damages, and potentially escape responsibility for their conduct, have no claim of *Berry* "indigency." Such underhanded efforts are not only an exercise in bad faith, but also frustrate the conciliatory intent of Rule 238. The trial judge correctly found that Tarasovich had assets, apart from his insurance policy, which he could have contributed toward a more meaningful settlement offer to the plaintiffs.

Tarasovich also argues that even if he "had the wherewithal to have made some additional contribution, such additional contribution would clearly have been woefully inadequate for purposes of effectuating the goals of Rule 238." Tarasovich's brief, at 24. In support for this contention he cites this language from *Berry*:

> To avoid demanding the impossible, then, we must first discern a defendant's ability to make an offer that would have been sufficient to stay the operation of Rule 238. Such a determination will not only yield more equitable results, it will also permit the application of Rule 238 in cases in which the Supreme Court intended it to apply: to a defendant with sufficient assets to offer a reasonable settlement figure, but who, for whatever reason, chose not to make such an offer.

*Berry*, 348 Pa.Super. at 627, 502 A.2d at 721–722. He argues that since the verdict was in the millions of dollars, a "reasonable offer" sufficient to avoid imposition of delay damages would have far exceeded what he could have contributed. Thus, *Berry* precludes the imposition of delay damages because it was impossible for him to contribute enough to make a "reasonable offer."

Tarasovich argues essentially that *Berry* creates a shelter for financially unstable defendants in two distinct situations. He claims that not only may a defendant escape imposition of delay damages when he has offered all available assets and the verdict exceeds the offer by 125%, but also when a defendant

chooses not to proffer available assets and the verdict discloses that even if he had offered them, the offer would still be insufficient to avoid application of the rule. This latter interpretation of *Berry* s holding frustrates the purpose of Rule 238 and is simply untenable.

The purpose of Rule 238 is to foster prompt settlement. Indeed, "[t]he defendant who does not make an early and adequate settlement offer seriously impedes the the objective of our Rule on delay damages." *Schrock v. Albert Einstein Medical Center*, 527 Pa. 191, 197, 589 A.2d 1103, 1107 (1991). If Tarasovich's interpretation of *Berry* were permissible, defendants with assets available for payment could "wait and see" if they are accountable for the damages of delay. For example, if a defendant holds assets worth $10,000 and suffers a judgment for $10,000, he is clearly accountable for delay damages because he could have made a "reasonable offer" under the rule. However, if that same defendant is sued for damages which are much greater than $10,000, $7,000,000 for example, he can claim that he was "indigent" because he could not make a reasonable offer to avoid imposition of the damages. Thus, a defendant might not make an offer and gamble that a verdict is so high that he couldn't have made a reasonable offer. Moreover, adopting this rationale makes a defendant's duty to offer his available assets contingent on the severity of the wrong he has committed. This result is absolutely contrary to *Berry*'s requirement that a plaintiff who sues an impecunious defendant have the option to avoid the expense of trial by accepting as a settlement all of the assets the defendant has available to offer.[7]

7. We note that the determination of whether a particular defendant has offered all assets "available" for settlement is a factual one made by the trial judge presiding at the Rule 238 hearing. By no means does our holding require a defendant to offer all of his worldly possessions in settlement of a civil action. Rather, a trial judge may begin his inquiry by considering those assets which would be eventually subject to execution of a money judgment at law. Of course, all personal property and salable real estate owned by a judgment debtor is subject to execution unless specifically exempted by statute. *Gulf Mortgage & Realty Investments v. Alten*, 282 Pa.Super. 230, 422 A.2d 1090 (1980); *Gordon v. Rees*, 154 Pa.Super. 594, 36 A.2d 841 (1944). The exemptions are comprehensively listed at 42 Pa.C.S.A. §§ 8104–8152. More-

*Berry,* then, stands for the simple proposition that a defendant who offers all that he has available for payment will not be held for delay damages after the date of the offer. If damages are imposed because defendant is expected to offer more than he has, Rule 238's purpose is frustrated because we ask defendant to do the impossible. Furthermore, defendants are forced to perfunctorily offer money which they cannot deliver upon acceptance of the offer. This does nothing to further the Rule's purpose. Instead, *Berry* applies to forgive a defendant who has violated the letter of Rule 238, but has made every effort to comply with its spirit. *Berry* ensures that a plaintiff suing a financially unstable defendant is made the best possible offer under the circumstances, while at the same time avoids punishing a defendant who fails to do the impossible. A defendant who chooses to ignore his duty to make an offer of all available assets, however, does not put plaintiff in the position that Rule 238 is specifically designed to create.

Our Supreme Court has recognized the *Berry* principle that a defendant must offer all assets available for settlement. In *Woods v. Commonwealth, Dept. of Trans.,* 531 Pa. 295, 612 A.2d 970 (1992), plaintiff sued the Department of Transportation ("DOT") for personal injuries. DOT offered a $60,000 settlement which was rejected. The jury awarded plaintiff $1,500,000. The trial judge awarded plaintiff delay damages, but assessed the award based on $250,000, the maximum amount collectible against the Commonwealth under the applicable statutory cap.[8] The Supreme Court held that delay damages must be based on the amount of the jury verdict despite the existence of the cap. It reasoned that the plain language of Rule 238 dictated this result and that if delay damages against the Commonwealth were always based on a

over, a defendant who has filed under the Bankruptcy Code may not have assets "available" for settlement, since the automatic stay provisions of the Bankruptcy Code protect a debtor from collection efforts against property of his estate after he files under the Code. 11 U.S.C.A. § 362(a). These considerations, as well as any provisions concerning fraudulent conveyances under state and federal law, may be factored into the judge's inquiry. This is not an exhaustive list of such factors.

8. 42 Pa.C.S.A. § 8528(b).

predictable constant, DOT would have no motivation to settle. *Id.* at 299–301, 612 A.2d at 972.

In responding to one of the Commonwealth's arguments, the Court stated:

> With regard to [DOT's] third argument, i.e. that permitting damages in an amount different than the cap would require the Commonwealth to offer an amount many times in excess of the cap, we note that Explanatory Comments to Rule 238 provide that damages for delay are not to be awarded after the date of a defendant's offer when the court determines that the offer was the full amount available for payment. Thus, in the context of statutory cap cases, the obligation for the payment would cease at the time the statutory cap was tendered, and [DOT's] argument on this issue is without foundation.

*Id.*

The Supreme Court's rationale in *Woods* mirrors the *Berry* notion that a defendant will not be liable for delay damages after the date that he offers all that is available for payment. A defendant is not required to offer a settlement which he cannot pay. He must offer what he has, however, even if that amount is less than what might constitute a "reasonable offer" in light of the verdict. Since Tarasovich did not offer all available assets, he cannot claim shelter from the imposition of delay damages under *Berry v. Anderson*'s umbrella. We must reject his argument.

In conclusion, we hold that in order for a defendant to claim the "indigency" exception to delay damages under *Berry v. Anderson,* the trial court must determine that defendant made an offer of all assets available and that it was impossible for him to offer more. Although we do no more than reaffirm *Berry*'s holding, we reiterate the importance of a defendant's duty to offer all available assets before trial, even if, in light of the verdict, those assets might not constitute a "reasonable offer" that would avoid application of Rule 238. This require-ment ensures that a plaintiff have a reasonable opportunity to avoid potentially fruitless litigation with an impecunious defen-dant. Since the trial court found that Tarasovich did not offer

all available funds, he must be held accountable for damages under the Rule.

Finally, Tarasovich challenges the constitutionality of Rule 238. He claims that Rule 238, as amended in 1988, violates the substantive due process, equal protection, and excessive fines clauses of the United States and Pennsylvania Constitutions. We have reviewed Tarasovich's two-paragraph argument supporting these three contentions and conclude that he raises no constitutional claim that has not been fully addressed by the Supreme Court and our Court. *Laudenberger, supra* (original Rule 238 does not violate due process or equal protection clauses); *Craig, supra,* (constitutional rationale of *Laudenberger* has continuing vitality); *Dietrich v. J.I. Case Co.,* 390 Pa.Super. 475, 568 A.2d 1272 (1990). Until we are presented with a claim that raises a novel argument regarding Rule 238's constitutionality, we will continue to find discussion of these claims unnecessary and, as we have written, "spurious." *Dietrich, supra,* 491, 568 A.2d at 1280 (quoting *Shellhamer v. Grey* 390 Pa.Super. 122, 129, 568 A.2d 224, 228 (1989)).

## IV.

Tarasovich argues fourth, and finally, that the damage awards were excessive. The jury awarded $7,000,000 to Diane Krysmalski in compensation for the loss of her leg and attendant pain and suffering damages; $5,000,000 to Gloria Krysmalski for the same; $35,000 to David, and $100,000 to the Estate of Shirley Krysmalski for negligent infliction of emotional distress. Tarasovich argues that the trial court erred in denying his motion for a remittitur and, alternatively, that a new trial should have been granted on these grounds. Although the verdicts are substantial, we cannot agree that they were excessive.

The standard by which we view a claim that a verdict is excessive is well-settled. A new trial may be granted on the ground that a verdict is excessive and against the weight of the evidence only when the verdict shocks the

court's sense of justice and makes a new trial imperative so that right may be given another opportunity to prevail. *Freeman v. Maple Point*, 393 Pa.Super. 427, 574 A.2d 684 (1990). Likewise, an order of remittitur may only be ordered when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption. *Stoughton v. Kinzey*, 299 Pa.Super. 499, 445 A.2d 1240 (1982). In both situations, granting relief is within the sound discretion of the trial court, and we will reverse only if we find an abuse of discretion. *Id.*; *Freeman, supra.*

■ We have repeatedly recognized that each case is unique and depends on its own special circumstances. The Court should consider, among others, the so-called *Kemp* factors in determining whether or not a particular verdict was excessive. These factors are: (1) the severity of the injury; (2) whether plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of plaintiff; (3) whether the injury will affect plaintiff permanently, (4) whether plaintiff can continue with his or her employment, (5) the size of the out-of-pocket expenses; and (6) the amount plaintiff demanded in the original complaint. *Kemp v. Philadelphia Transportation Corp.*, 239 Pa.Super. 379, 361 A.2d 362 (1976); *Mineo v. Tancini*, 349 Pa.Super. 115, 502 A.2d 1300 (1986), *alloc. denied* in 515 Pa. 614, 530 A.2d 868 (1986). After reviewing this case under these guiding precepts, we cannot conclude that the trial judge abused his discretion in denying Tarasovich's motions for a remittitur and new trial.

First, Tarasovich argues that the jury awarded the substantial verdicts based on the prejudice caused by David's improper reference to his mother's untimely death. We cannot agree. We found above that the judge's cautionary instruction precluded any possibility that the statement prejudiced the jurors when they determined that Tarasovich was liable to plaintiffs. That rationale applies here. It would be anomalous for us to hold at the same time that the statement did not have an effect on liability deliberations, yet did have an effect

on the amount of damages. The jury was not prejudiced by the statement and we will not engage in further speculation.

Second, all of the claims included the intangible element of pain and suffering. The amount of pain and suffering damages, both past and future, is primarily a jury question. *Stoughton, supra.* Indeed, a jury is entitled to award substantial damages for pain and suffering where the injuries are permanent and cause pain. *Id.* (citing *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960)). Our Supreme Court has recently reaffirmed its position that the jury and trial judge are peculiarly situated to view the witnesses and evaluate a proper award of emotional suffering damages. *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992). In *Botek,* the Court reversed our determination that a remittitur should have been ordered in a case where plaintiff had clearly suffered emotional harm, but had no objective scientific evidence to confirm any emotional injury. Fundamental to the Supreme Court's holding in *Botek* is that each plaintiff is entitled to be compensated for pain and suffering attendant to physical harm, and an appellate court should only disturb the fact finder's decision in drastic circumstances. *Id.* at 166–167, 611 A.2d at 1177.

In this case, we need to go no further than the nature of the harm suffered by the adolescent girls to find support for a substantial award of pain and suffering damages. Both Diane and Gloria Krysmalski suffered a leg amputation as a sole and direct consequence of Tarasovich's negligence. The pain resulting from having a limb sheared from one's body in an accident can hardly be quantified and need not be related to the amount of out-of-pocket expenses, as Tarasovich seems to intimate. Both girls testified that they suffer pain and difficulty walking with an artificial limb. Both girls are embarrassed by their condition and testified that their involvement in scholastic activities is limited. Indeed, the loss of a limb will affect these victims every day for the rest of their lives. We will not substitute our judgment for the jury's in this case.

Finally, the awards to the son and mother are equally beyond our question. A pain and suffering award of $35,000 to a victim in such a traumatic accident is hardly substantial, let alone excessive. Likewise, a jury could reasonably conclude that a mother who contemporaneously witnesses her childrens' limbs being severed, manifests hysterical screaming and crying, and exhibits emotionally unstable behavior could reasonably be entitled to $100,000. There was no abuse of discretion in denying Tarasovich's motion for a remittitur or new trial.

Judgments affirmed.

ROWLEY, P.J., and DEL SOLE, JOHNSON, HUDOCK, and FORD ELLIOTT, JJ., join the majority opinion.

CAVANAUGH, J., files a Dissenting Opinion, in which POPOVICH, J., joins.

CIRILLO, J., files a Dissenting Opinion.

JOHNSON, J., files a Concurring Statement, in which DEL SOLE and FORD ELLIOTT, JJ., join.

CAVANAUGH, Judge, dissenting:

I must respectfully disagree with the majority disposition insofar as it affirms the verdict of $100,000. In favor of the Estate of Shirley Krysmalski on the basis of a claim for negligent infliction of emotional distress. I dissent on the basis that; 1) there was no evidence to support a determination that Mrs. Krysmalski was an eyewitness to the impact occurrence of the accident as opposed to witnessing the injuries suffered by her daughters as a result of the accident and; 2) because there was no medical evidence to support her claim of emotional distress as a result of the accident. In the landmark case of *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), our supreme court adopted the rule which confirmed a cause of action for damages in a person who was a bystander eyewitness to traumatic injuries suffered by the child. In *Sinn*, the claimant was the mother of a child and she saw a vehicle strike the child in a fashion that resulted in the child's

death and the supreme court, under those circumstances, affirmed that a cause of action had been pled properly in the complaint filed in that case. In that case it is most important to note that the potential liability of the defendant was grounded on the fact that the claimant was a bystander who was a mother who witnessed the violent death of her small child.

There is simply no evidence that Mrs. Krysmalski witnessed the impact of the vehicle with her daughters and therefore can be said to have been a bystander who witnessed the accident although it is clear that she did come upon the scene very shortly thereafter and was seen reacting to the accident on the scene of the accident after its occurrence. This court has already made a substantial expansion of the *Sinn* rule in *Neff v. Lasso,* 382 Pa.Super. 487, 555 A.2d 1304 (1989) where we adopted a before-and-after test which permitted recovery on a claim of negligent infliction of emotional distress even though there was no impact visualization where the court found that the observer was a "percipient" witness who had overall awareness of the accident. Further, it is important to recognize that there was no medical evidence to support the experience of mental or psychic damages suffered by Mrs. Krysmalski in this case. This ignores the fact that the underpinning of the *Sinn v. Burd* decision was a constituent finding that medical testimony could supply an explanation of the experience of mental or psychic damage.

> *Medical science is able to supply a causal link between the psychic damage suffered by the bystander and the shock or fright attendant to having witnessed the accident.*

*Sinn v. Burd,* 146 Pa. at 158, 404 A.2d at 678.

Finally, in an opinion by Judge Montgomery of this court which examined all of the authorities on the present subject, the following conclusion was reached.

> *Based upon all of the foregoing authority, we conclude that the element of physical harm or injury is a necessary element of the right of the Appellant mother to recover on her claim of negligent infliction of emotional distress in this case.*

*Wall by Lalli v. Fisher,* 388 Pa.Super. 305, 313, 565 A.2d 498, 502 (1989).

No one can gainsay the enormity of the tragedy which occurred in this accident or the catastrophic consequences suffered by the victims. There can be no question but that Mrs. Krysmalski had been seriously emotionally affected by seeing her two daughters suffer the grave injuries that they experienced. However, in terms of a new cause of action created under our law, which has the potential of spawning innumerable claims if not clearly and rationally delimited, it appears to me that the evidence was insufficient in two respects; (1) as to her visualization of the accident and, (2) as to the proof *at the trial* of the suffering of emotional distress.

I next observe that it is convenient to think of the emotional distress claim (which most frequently has arisen when a parent observes injury to his or her child) as a derivative cause of action similar to a parent or guardian's claim for dependent's medical expenses or loss of consortium claim. However, it is not. It is a separate and independent cause of action which was first recognized in Pennsylvania in *Sinn v. Burd, supra.* Thus, the absence of sufficient evidence to support the cause of action would require the finding of insufficiency of the evidence and the remedy of entry of judgment n.o.v. rather than the award of a new trial as when there is only an error in the propriety of the damage element of a cause of action. Nevertheless, in this case, appellant in his post-verdict motions sought only a new trial.

I have examined appellant's three motions for post-trial relief filed pursuant to Pa.R.C.P. 227.1 (GD 86–12693, Issue No. 131848, GD 86–12694, Issue No. 131847 and GD 86–12695, Issue No. 131849) and find that in the introduction paragraph and the concluding prayer of each only a *new trial* is sought. This issue of the limited relief sought is raised in appellee's brief, but is not mentioned in appellant's brief.

The doctrine of waiver is firmly entrenched in Pennsylvania law. It would be a clear violation of the Rules of Procedure if we were to grant relief which is not sought under Pa.R.C.P.

227.1 [1] which is the general rule covering post-trial motions. This comprehensive post-trial motion rule replaced, *inter alia*, motions for a new trial and motions for judgment notwithstanding the verdict which theretofore were separate motions. Our case stands on the same footing as *Dinio v. Goshorn*, 437 Pa. 224, 270 A.2d 203 (1960) an insufficiency of the evidence case where the court limited its relief to the grant of a new trial since no motion for judgment n.o.v. had been filed. Accordingly, I would grant a new trial as to the claim of the Estate of Shirley Krysmalski v. Tarasovich.[2]

I would, therefore, vacate the award of $100,000. on the claim of Shirley Krysmalski's estate and award a new trial on this claim only.

JOHNSON, Judge, concurring.

I join the excellent Majority Opinion of our esteemed colleague, Judge Olszewski. I wish to emphasize, however, that the question of who may ultimately be responsible for the payment of Rule 238 delay damages in this case is not before this court at this time. The analysis of the proper assessment of delay damages by my distinguished colleague appears to go further than should be necessary to dispose of this appeal.

I join with the majority in acknowledging that, under *Berry v. Anderson*, 348 Pa.Super. 618, 502 A.2d 717 (1986), a defendant must offer all assets that she or he has available for payment in order to escape liability for delay damages. It is also clear, as Judge Olszewski points out, that whether defendant has tendered all available assets is determined by the trial judge at an evidentiary hearing.

1. *See also* Pa.R.A.P. 302:
 Rule 302. Requisites for Reviewable Issue
 (a) General Rule. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

2. On the issue of relief sought on this claim of error, most respectfully, it seems to me that the majority (in dicta, since no relief is, in fact, granted), confuses *sufficiency of the evidence* and *weight* of the evidence and the appropriate relief applicable thereto, and unnecessarily structures its opinion in response to the confusion.

In this case, the trial judge found that Tarasovich had personal assets which he transferred to his son for nominal consideration after the accident. I agree with the majority that, on these facts alone, Tarasovich cannot seek the protection which *Berry* provides impecunious defendants. Since this is sufficient to decide the issue of Tarasovich's liability for delay damages, I would refrain, at this time, from reviewing his arguments concerning whether the insurance company, during its negotiations on Tarasovich's behalf, offered the policy limits under Tarasovich's insurance policy and whether an offer of less than full policy limits has any effect on the liability of the insured to the injured plaintiffs. Majority op., at 308–309.

CIRILLO, Judge, dissenting:

I most respectfully dissent on the question of negligent infliction of emotional distress and on the question of delay damages.[1]

When the Pennsylvania Supreme Court opened the courthouse doors to bystander recovery for negligent infliction of emotional distress, it did so reluctantly and only after forceful prodding from one of its members.[2] The test adopted in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) is that

the infliction of emotional distress is reasonably foreseeable ... when ... the plaintiff was located near the scene of the accident ...; [when] the shock resulted from a direct emotional impact upon the plaintiff from the sensory and

1. I add my voice to emphasize agreement with the majority's footnote one; Tarasovich is not entitled to pick and choose pieces of a panel's decision in a petition for argument *en banc*. When this court grants *en banc* consideration, our review of the case is plenary.

2. Justice Musmanno in his famous dissent in the case of the perambulating bovines said he would dissent from the strict application of the impact rule "until the cows come home." *Bosely v. Andrews*, 393 Pa. 161, 142 A.2d 263 (1958). Justice Musmanno's view eventually was adopted in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970). When *Niederman's* "zone of impact" rule became unworkable, this state adopted the foreseeability test of *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979).

contemporaneous observance of the accident ...; [when the] plaintiff and victim were closely related ...

*Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 276, 516 A.2d 672, 677 (1986). Defendants have a duty to and, consequently, are liable for injuries to foreseeable plaintiffs. *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 162 N.E. 99 (1928).

In *Sinn v. Burd* the mother who watched from the front porch of her home as a car struck and killed her child was found to be a foreseeable plaintiff and to have a cause of action for mental distress and its effects. Since *Sinn v. Burd,* the debate has centered on the meaning of "sensory and contemporaneous observance." *Id.* 486 Pa. at 171, 404 A.2d at 685. In *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981), the state supreme court held that a father who arrived on the accident scene after his son had been taken to the hospital had not stated a cause of action. Five years later the court reached the same conclusion in *Mazzagatti,* regarding a mother who arrived on the scene minutes after the accident and saw her child's body in the street. *Mazzagatti,* 512 Pa. at 280, 516 A.2d at 679. The court reasoned that

> where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system. The negligent tortfeasor inflicts upon this bystander an injury separate and apart from the injury to the victim.

*Id.* at 279–80, 516 A.2d at 679.

A father who followed an ambulance to the scene of an accident and saw his injured son in the street failed to state a cause of action. *Brooks v. Decker,* 512 Pa. 365, 516 A.2d 1380 (1986). And, in *Bloom v. Dubois Regional Medical Center,* 409 Pa.Super. 83, 597 A.2d 671 (1991), this court denied recovery to a husband who found his wife hanging by her neck in a hospital room, allegedly due to the failure of the hospital

and her doctor to treat her suicidal tendencies. The panel held that the husband had not witnessed the tortious conduct, only its aftermath.

The next year, a panel of this court allowed recovery by a woman whose mother died in her arms after a doctor failed to diagnose or treat a serious heart ailment. The daughter had taken her mother for treatment and was present when the doctor was dismissive of the woman's symptoms. *Love v. Cramer*, 414 Pa.Super. 231, 606 A.2d 1175 (1992). I dissented in *Love* on grounds that a lapse of seven weeks between the act of malpractice and the death rendered a "sensory and contemporaneous observance of the accident" an impossibility. *Id.* at 240, 606 A.2d at 1180–81. This court has also allowed a wife to recover when she saw a speeding vehicle heading for her husband's car, heard the collision, and immediately realized her husband had been struck. *Neff v. Lasso*, 382 Pa.Super. 487, 555 A.2d 1304, *allocatur denied*, 523 Pa. 636, 565 A.2d 445 (1989).

The case at hand is distinguishable from those in which recovery has been allowed because Shirley Krysmalski did not observe the tortious conduct, only its aftermath. As the state supreme court reasoned in *Mazzagatti*, "The feelings of anguish and bereavement suffered ... are not substantially different from those suffered by any parent who sees his or her dying injured child." *Mazzagatti*, 512 Pa. at 280, 516 A.2d at 679. Krysmalski's relationship to the accident which injured her children is most analogous to that in *Brooks v. Decker* because she was drawn to the accident scene by the commotion which followed the impact, just as Brooks was drawn to the scene of his son's accident by the ambulance. Krysmalski did not observe Tarasovich's car speeding toward her children as was true of the wife allowed recovery in *Neff v. Lasso, supra.*

Tarasovich also argues that the record is devoid of evidence that Shirley Krysmalski suffered the requisite physical manifestation of her emotional distress. The defendant misapprehends the law of negligent infliction of emotional distress.

Tarasovich relies on *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987), a case involving intentional infliction of emotional distress, in which the state supreme court held that medical evidence of a physical manifestation of the emotional distress is a requisite to recovery. Although the holding in *Kazatsky* was limited to cases of intentional infliction of emotional distress, Tarasovich argues the reasoning should be analogized to that for negligent infliction of emotional distress. In *Kazatsky* the court reasoned that "[i]t is basic to tort law that an injury is an element to be proven ... it is unwise and unnecessary to permit recovery ... without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Id.* at 197, 527 A.2d at 995. No case has addressed whether expert medical testimony is a requisite for a finding of negligent infliction of emotional distress. The record fails to offer evidence of medical treatment for Shirley Krysmalski. Her claim, Tarasovich argues, must therefore be denied.

Claims for negligent infliction of emotional distress are distinguishable from those for intentional infliction of emotional distress because intentional infliction is determined by the outrageousness of the defendant's behavior while negligent infliction claims are determined by the foreseeability of the plaintiff's distress. *See Sinn, supra; Kazatsky, supra.* In claims for intentional infliction of emotional distress, the supreme court imposed the requirement of expert medical evidence of the distress as a counterweight to the ease with which fraudulent claims of outrageous behavior could be brought. A claim for negligent infliction would not need the same counterweight because the question of foreseeability already imposes a balance with which to weed out fraudulent claims. In addition, since punitive damages are not available for negligent acts, there is no need to impose an added test to balance the possibility of recovery. Therefore, there is neither need nor logic to support engrafting the requirement that only competent medical evidence can prove emotional distress onto a negligence case. Indeed, the court specifically held in *Sinn v. Burd* that "psychic injury is capable of being proven

despite the absence of a physical manifestation of such injury." *Sinn v. Burd,* 486 Pa. at 160, 404 A.2d at 679. Instead, the court imposed the limitation of "sensory and contemporaneous observance of the accident" as the bright line test to separate cases involving the shock of seeing the accident from those in which a parent's inevitable grief comes to the fore. *Sinn v. Burd, supra; Mazzagatti, supra; Brooks, supra.*

A line of cases following *Sinn v. Burd, supra,* has refined the holding to require that physical injury must be averred to sustain a cause of action for negligent infliction of emotional distress. *See Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. 8, 589 A.2d 1143 (1991) (demurrer sustained for failure to state a cause of action when plaintiff failed to allege physical harm from a raucous hospital staff birthday celebration while she was being treated); *Wall by Lalli v. Fisher,* 388 Pa.Super. 305, 565 A.2d 498, *allocatur denied,* 526 Pa. 636, 584 A.2d 319 (1989) (mother who witnessed a dog bite her child failed to aver physical injury to herself); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981) (plaintiff who was charged with murder after hospital records were altered to blame him for a death and to conceal malpractice failed to aver physical harm and stated no cause of action for negligent infliction of emotional distress).

The requirement that physical harm must accompany emotional distress to state a cause of action is based on the Restatement (Second) of Torts § 436A which states:

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

Thus, our question becomes what is the quantum of bodily harm which must be averred to state a cause of action. Comment *c* to Section 436A of the Restatement (Second) of Torts posits that liability is dependent on the duration and the severity of the symptoms alleged. Temporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not

compensable harm; but, long continued nausea or headaches, repeated hysterical attacks or mental aberration are. This court applied the Restatement standards to a case in which the plaintiff averred "headaches, shaking, hyperventilation, nightmares, shortness of breath, lack of control over the bowels, and tightening of the muscles in the neck, back and chest" and found that she had stated a cause of action for negligent infliction for emotional distress when her employer wrongfully coerced her to enter an abusive substance abuse program. *Crivellaro v. Pennsylvania Power and Light Co.*, 341 Pa.Super. 173, 491 A.2d 207 (1985). Again relying on Comment *c*, a panel of this court held that "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and . . . ongoing mental, physical and emotional harm" sufficiently stated physical manifestations of emotional suffering to sustain a cause of action. *Love v. Cramer, supra.*

In the case at hand, the plaintiffs' amended complaint averred that Shirley Krysmalski "became hysterical, unnerved, emotionally shattered and physically sickened as she viewed" her children. That, it seems to me, is the kind of transitory reaction which the Restatement held could not sustain a cause of action for negligent infliction of emotional distress. Krysmalski's complaint, however, goes on to aver that she suffered "severe depression and an acute nervous condition . . . is tortured by flashbacks and nightmares, general emotional trauma, inability to sleep peaceably, all of which conditions are or may be of a serious and permanent nature." When we return to *Crivellaro, supra,* and consider the cases which that court collected from other jurisdictions and cited with approval regarding physical harm, we find depression, nightmares, nervousness, insomnia and hysteria. *Id.* at 180, 491 A.2d at 210. I would conclude, therefore, that the plaintiffs' amended complaint sufficiently pled bodily harm to sustain a cause of action for negligent infliction of emotional distress. *Crivellaro, supra; Love, supra.* Bodily harm is, however, only one prong of a cause of action for negligent infliction of emotional distress.

To conclude, I dissent from the award of damages to Shirley Krysmalski's estate for emotional distress not because she was not injured, she was; but because she has failed to prove that the tortious behavior of Tarasovich *caused* her injury. Her injury stems from the natural, understandable, and wrenching distress of a mother who sees her mutilated children lying in pools of blood. But her reaction was grief, not the shock attendant upon actually seeing the accident happen. Shock is actionable, *Sinn v. Burd, supra;* grief is not. *Brooks, supra.*

I also most respectfully dissent on the question of awarding delay damages under Rule 238 and will do so "until the cows come home." [3]

Tarasovich offered a settlement of $215,000, $100,000 for each child who lost a leg and $15,000 for David's cut chin. The jury returned a verdict of more than 12 million dollars. Rule 238 establishes delay damages as interest on the final award payable at a published rate. Delay damages are payable from a period of one year after process is served until verdict, excluding that period of delay attributable to the plaintiff and any period after an offer by the defendant which is 125 percent of the final award. Pa.R.C.P. 238. Tarasovich was assessed an additional three million dollars in delay damages.

Tarasovich argues that he offered the limit of his insurance policy and that he is an indigent. The record indicates otherwise; Tarasovich's insurer never offered the $300,000 limit of his policy, only the limit of $100,000 for each of the two girls injured. And, the trial court's finding that Tarasovich was not indigent is amply supported in the record. The Krysmalskis have met the requirements of Pa.C.R.P. 238, the jury award is more than 125 percent of the defendant's last, best offer and the defendant has failed to demonstrate that he is protected by the indigency exception in *Berry v. Anderson,* 348 Pa.Super. 618, 502 A.2d 717 (1986) (delay damages will not be assessed when an indigent defendant has offered the full amount available and it was impossible to have offered more).

**3.** *Bosely v. Andrews,* Musmanno, J., dissenting, see footnote 2, *supra.*

However, Tarasovich also challenges Rule 238 damages on constitutional grounds. I have voiced my feelings on the constitutional infirmities of Pa.R.C.P. 238 repeatedly. *See Lilley v. Johns–Manville Corp.*, 408 Pa.Super. 83, 596 A.2d 203 (1991) (Cirillo, J., concurring); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 398 Pa.Super. 264, 580 A.2d 1341 (1990) (Cirillo, J., concurring); *Dietrich v. J.I. Case Co.*, 390 Pa.Super. 475, 568 A.2d 1272 (1990) (Cirillo, P.J., concurring and dissenting); *Schrock v. Albert Einstein Medical Center*, 386 Pa.Super. 215, 562 A.2d 875 (1989) (Cirillo, P.J. dissenting); *Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 552 A.2d 258 (1988) (en banc) (Cirillo, P.J. dissenting); *see also Tindal v. Southeastern Pennsylvania Transportation Authority*, 385 Pa.Super. 94, 560 A.2d 183 (1989) (en banc) (Cirillo, P.J., concurring and dissenting); *Snelsire v. Moxon*, 384 Pa.Super. 85, 557 A.2d 785 (1989) (en banc) (Cirillo, P.J., concurring); *King v. Southeastern Pennsylvania Transportation Authority*, 383 Pa.Super. 420, 557 A.2d 11 (1989) (en banc) (Cirillo, P.J., dissenting); *Miller v. Wise Business Forms, Inc.*, 381 Pa.Super. 236, 553 A.2d 443 (1989) (en banc) (Cirillo, P.J., dissenting).

Because Rule 238 makes defendants responsible for delays which they did not cause, it violates due process. Rule 238 does not provide for the exclusion of periods of delay not caused by either party. *Miller*, 381 Pa.Super. at 241, 553 A.2d at 446. This makes defendants culpable simply because they have chosen to defend their cases. *Dietrich*, 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting).

Although labelled procedural, Rule 238's application impacts the substantive rights of litigants. The Pennsylvania Constitution vests in the Supreme Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant ..." Pa.Const. Art. 5, § 10(c). The Constitution specifically states that the Rules of Civil Procedure do not enlarge the substantive rights of any litigant. *Svetlik v. Svetlik*, 377 Pa.Super. 496, 500, 547 A.2d 794, 796–97

(1988). Because, in my opinion, Rule 238 operates to alter the substantive rights of the parties, it exceeds the rulemaking authority of the Pennsylvania Supreme Court, and is therefore unconstitutional. *Dietrich,* 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting). Rule 238 denies defendants an exclusion for periods of delay that were the fault of neither party. Consequently, Rule 238 punishes defendants simply because they have chosen to litigate their cases. *Dietrich,* 390 Pa. Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting). Sanctioning a defendant with delay damages is a substantive enlargement of duties owed; an enlargement which under the Constitution of this Commonwealth requires legislative action. *Id.*