J-A11018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PHILIP D. EDWARDS, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUANTUM IMAGING & THERAPEUTIC | : | No. 1732 MDA 2017 |
| ASSOCIATES, INC. | : | |

Appeal from the Judgment Entered November 2, 2017
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  13-6932

BEFORE:   STABILE, J., NICHOLS, J., and PLATT, J.*

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 18, 2018**

Appellant Philip D. Edwards, M.D., appeals from the judgment in favor of Appellee Quantum Imaging & Therapeutic Associates, Inc., entered after the trial court denied Appellant's request for a new trial on the basis that the trial court permitted prejudicial testimony to be elicited during trial regarding the outcome of a prior lawsuit.  Appellant claims that the trial court erred in concluding that he opened the door to the prejudicial testimony.  We affirm.

The trial court summarized the relevant facts of this matter as follows:

This action commenced on November 22, 2013, with the filing of a complaint sounding in breach of contract against Appellee.  In summary, Appellant alleged that Appellee agreed to hire him on or around [January 16, 2009], to perform medical radiology

---

* Retired Senior Judge assigned to the Superior Court.

services.[1]  Appellant averred that Appellee knew that Appellant had been terminated from, and did not enjoy staffing privileges at, Geisinger Medical Center [(Geisinger)] . . . .  Appellant stated that Appellee was aware that there was ongoing litigation relating to the employment separation with Geisinger at the time he was hired [(Geisinger litigation)].  In applying for credentials[2] with other area hospitals as an employee of Appellee, Appellant was required to affirm that his staffing privileges [had never been] under suspension, termination, or any other clouds with any other hospitals.  Appellant averred that, after consultations with employees of Appellee, including staff within Appellee's human resources department, Appellant was instructed to state that his staffing privileges were unblemished.

After an uneventful beginning to his employment, Appellant eventually ended up in a dispute with the employees of a third[ ]party, Pinnacle Health.  Following that dispute, Appellant's staffing privileges at Pinnacle were [temporarily curtailed and Appellant was informed in writing that if he had another incident, particularly with Pinnacle employees, his employment with Appellee would be terminated.  E]ventually[,] Appellant's employment relationship with Appellee was . . . terminated [after Appellant initially refused to treat a patient at Pinnacle and became hostile with a Pinnacle physician, Dr. Faith Matzoni].  Appellant filed suit, alleging that his termination was in violation of his employment agreement with Appellee,[3] and that Appellee

_____

[1] Appellee signed an initial employment agreement on January 16, 2009.  **See** Appellant's Ex. 1.  Appellant eventually became a shareholder of Appellee and signed a shareholder employment agreement on December 21, 2010.  **See** Appellant's Ex. 2.

[2] Before a doctor may be associated with the staff of a hospital or paid for services by an insurance company, he or she must complete a process known as "credentialing," whereby his or her board certifications and other qualifications are screened to ensure the doctor is fit to be a part of the staff. N.T., 9/20/17, at 307-09.

[3] Appellant was entitled to 180 days' written notice if his employment was terminated without cause and no notice if his employment was terminated for cause.  Appellant's Ex. 2 at ¶ 3.  Appellant asserted in his complaint, and continues to assert, that his employment with Appellee was terminated

- 2 -

> or its agents had defamed Appellant by contacting prospective employers and advising them to not hire Appellant.

Trial Ct. Op., 1/3/18, at 1-2.

Prior to trial, Appellant filed two motions *in limine*. One sought to preclude testimony regarding an unemployment compensation hearing involving Appellant, and the other sought to preclude testimony regarding the outcome of Appellant's lawsuit with Geisinger, which was unfavorable to Appellant. Both motions *in limine* were granted.

This matter proceeded to a jury trial from September 18, 2017, through September 20, 2017. At trial, Appellant testified during redirect examination that the legal aspects of his termination from Geisinger were "very muddled." N.T., 9/19/17, at 139. The trial court initiated a sidebar discussion after this comment regarding the parties' positions as to whether testimony of the outcome of the Geisinger litigation should be permitted. Appellee's counsel argued that "the door ha[d] been opened" to permit such testimony, *id.* at 140, while Appellant's counsel argued that the "muddled" testimony went to Appellant's state of mind at the time he sought employment with Appellee and the Geisinger litigation was ongoing. *Id.* Appellant's counsel also reiterated the position that Appellee's employees had urged Appellant to indicate that

---

without cause and without notice. Dr. Elizabeth Bergey, president of Appellee, indicated that Appellant was terminated for cause for violating paragraph 3(b) of the shareholder employment agreement, which indicates that an employee's employment may be terminated for cause if the employee "engages in materially unprofessional, dishonest, or fraudulent conduct or conduct which is detrimental to the reputation, character, or standing of [Appellee]." Appellant's Ex. 2 at ¶ 3(b).

- 3 -

his staffing privileges had not been terminated and argued that the result of the Geisinger litigation was irrelevant and prejudicial. *Id.*

The trial court concluded that Appellant's testimony that the legal aspects of his termination were "muddled" opened the door to evidence regarding the outcome of the Geisinger litigation. Trial Ct. Op., 1/3/18, at 7. During recross-examination of Appellant, over Appellant's objection, Appellee asked about the outcome of the Geisinger litigation. N.T., 9/19/17, at 146-47. Appellant indicated that he lost the lawsuit, and the trial court immediately thereafter provided an instruction to the jury indicating that the jury was not to consider the outcome of the Geisinger litigation in deciding the instant matter. *Id.* at 147.

At the conclusion of the trial, the jury determined that Appellee had not breached the employment contract between Appellant and Appellee in terminating Appellant's employment without six months' notice.[4] Appellant filed a timely post-trial motion seeking a new trial on the basis that it was prejudicial error to require him to answer the question regarding the outcome of the Geisinger litigation, particularly where the trial court had already ruled to preclude such evidence in response to Appellant's motion *in limine*. Appellant's Motion for Post-Trial Relief, 9/28/17, at 2. The trial court denied

_____

[4] At the close of Appellant's case, Appellee moved for a nonsuit regarding the defamation claim, which was granted. *See* N.T., 9/20/17, at 258. Appellant raises no issues regarding that claim.

the post-trial motion in an order docketed October 18, 2017. Judgment was entered in favor of Appellee on November 2, 2017.

Appellant filed a timely notice of appeal on November 3, 2017, and a timely court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on November 17, 2017. The trial court complied with Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

> Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to grant a new trial after overruling counsel's objection at trial and allowing [Appellee] to inquire into matters that were precluded by the [t]rial [c]ourt's ruling on [Appellant's m]otion *in* [*l*]*imine*, specifically, the outcome of [Appellant's] previous litigation against a different employer.

Appellant's Brief at 4.

Appellant asserts that the trial court erred in permitting Appellee to inquire into the outcome of the Geisinger litigation, particularly where the outcome of the motion *in limine* was to preclude this information from being admitted during the trial. ***Id.*** at 10.

The following exchanges during trial are relevant to this issue:

> [Appellant's Counsel:] Yes. The issue was the termination from Geisinger and how it was to be dealt with on this application form, and you testified that you and Mr. [Chris] Therit[, Appellee's director of Human Resources,] had a discussion.
>
> [Appellant:] Yes. Following the extensive discussions I had with Doctor Bergey during the interview process, she made it clear that she didn't consider this a termination, and she didn't think they could do it to me, the legal aspects were at least very muddled and that it would also make things additionally complicated.
>
> [Appellant's Counsel:] Doctor Edwards --

- 5 -

The Court: Hold on just a second. I want to see counsel now.

(The following discussion occurred at side bar.)

The Court: Now, with what he just said, I'm almost obligated to let him tell what the end of the litigation was. He said it was muddled, all screwed up. Now the Third Circuit Court of Appeals says you were wrong.

[Appellant's Counsel:] Frankly, I was shocked in [Appellee's counsel's] opening when he mentioned the Geisinger litigation. But I have to mention that it's an elephant in the room, the litigation, but not necessarily, Your Honor, the result. But the litigation itself, [Appellee's counsel] had it in his opening. I wanted to object, but I didn't want to.

The Court: But it wasn't anything about that was a natural thing to do. But now, his answer now is it was all muddled, they didn't understand, they didn't think they could do it. Now, we all know legally the Third Circuit Court of Appeals said he was wrong.

[Appellant's Counsel:] In the [m]otion *in* [*l*]*imine*, we had this issue. And the issue was whether, simply, Your Honor, if Geisinger litigation was about whether there was an oral contract or a written contract.

The Court: I agree with that. But he just said it was muddled and they didn't think they could do it. And obviously the court has said. I have ruled on that [m]otion *in* [*l*]*imine* was just like the workman's comp. We are not getting to the end result. It is not anything to do with that.

[Appellant's Counsel:] Right.

The Court: But now that has changed now.

[Appellant's Counsel:] Your Honor, one more point, if I could. The issue of the result of the litigation resulted later. This is just his mind-set at the time he completed the --

The Court: But he knows it now.

[Appellant's Counsel:] But not when he completed his credentialing applications, Your Honor. He is saying I am suing over this. It's not clear. And, guess what? Our position is [Appellee] said you are right, check no. That is the case. The

result is irrelevant, and not only irrelevant, it is prejudicial. That is my position.

[Appellee's Counsel:] I think the door has been opened. I was surprised when he mentioned anything about the litigation.

The Court: Well, you said something about that. I was like, okay, it is just, that was a normal thing to do, okay, when you did that. But now it has gotten a little further and I think you might be entitled to explain.

The crunch is going to come, you know, the testimony here is [Appellee] knew everything about this, they were subpoenaed, they knew all about it, but chose to do it. You know and I know the argument here is we wanted -- what is this -- an x-radiologist. They are in demand. We are willing to overlook stuff. Then when it gets -- I mean I know what the end argument is going to be here, but like --

[Appellant's Counsel:] Okay.

[Appellee's Counsel:] Okay.

(End of side bar discussion.)

N.T., 9/19/17, at 138-41.

Thereafter, during recross-examination, the following exchange occurred, in which Appellee's counsel questioned Appellant regarding the outcome of the Geisinger litigation:

[Appellee's Counsel:] You mentioned that you filed a lawsuit against Geisinger. Correct?

[Appellant:] Ultimately there was no choice, yes.

[Appellee's Counsel:] And you testified on redirect examination that it was muddled about how that termination was handled and what the outcome was. Isn't it true that in your lawsuit, the court found --

[Appellant's Counsel:] Objection.

The Court: Overruled. He can answer this one question and I am giving that instruction.

- 7 -

[Appellee's Counsel:] The court found in favor of Geisinger?

[Appellant:] The court ruled that they wouldn't put to a jury whether I had a contract or not.

The Court: Did they rule in favor of Geisinger?

[Appellant:] On that specific --

The Court: You did not win that suit. Yes or no?

[Appellant:] No, I didn't win that suit.

The Court: Now, I am instructing you the mere fact that there was previous litigation with Geisinger and the outcome of that has absolutely nothing to do with this trial. That outcome, that answer[,] was just to clarify what he said about well, it was confusing, nobody knew. It took a long time to resolve that. You put that out of your mind and disregard that totally in deciding this specific case.

*Id.* at 146-47.

In its Rule 1925(a) opinion, the trial court addressed one potential error at trial, which was whether Appellant was properly required to testify as to the outcome of the Geisinger litigation. The trial court indicated that

Appellant clearly opened the door and rendered the motion *in limine* moot. Appellant's testimony regarding the confusion and muddled waters surrounding the Geisinger litigation went directly to the heart of that suit's resolution, wherein the Third Circuit Court of Appeals directly and clearly ruled against Appellant. By testifying that the Geisinger [litigation] was muddled and complicated, Appellant invited Appellee to present testimony directly rebutting that proposition.

Trial Ct. Op., 1/3/18, at 7. The trial court continued, indicating that if it were an error to permit testimony of the outcome of the Geisinger litigation,

the court properly gave a cautionary instruction to the jury, which would have cured any harm that accrued to Appellant. Here, the jury was specifically instructed that Appellant's testimony regarding the Geisinger verdict was only to be used for the narrow purpose of clearing up Appellant's earlier testimony. This court

> specifically noted that the ultimate holding in Appellant's lawsuit against Geisinger was entirely irrelevant to this case, besides the value in clarifying Appellant's testimony. *See, e.g.*, *Krysmalski by Krysmalski v. Tarasovich*, [] 622 A.2d 298, 306 (Pa. Super. 1993) (wherein the Superior court noted that testimony regarding an issue not for the jury's consideration, followed by the prompt delivery of a clear cautionary instruction, would not create an abuse of discretion or prejudice warranting a new trial).

*Id.*

Appellant argues that "[t]he purpose of a [m]otion *in [l]imine* is to exclude highly prejudicial evidence before trial and to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the party." Appellant's Brief at 12. Moreover, Appellant contends that permitting the jury to know the outcome of the Geisinger litigation was prejudicial because it "led the jury to believe that [Appellant was] a serial litigant who repeatedly [was] fired, sue[d] the employer, and subsequently lost the lawsuits." *Id.* at 15. Appellant asserts that he did not open the door to allowing the previously precluded testimony because he argues that nothing in the statement "the legal aspects were at least very muddled" served to "implicate[] a lawsuit with Geisinger." *Id.* at 13. Appellant further asserts that "[i]t was counsel for [Appellee] who unnecessarily introduced the Geisinger litigation in his opening statement[,] . . . leaving [the jury] to wonder and speculate as to the outcome of the prior litigation." *Id.* at 13-14.

Our review of a challenge to a new trial order involves a two-step process. "First, the appellate court must examine the decision of the trial

court that a mistake occurred." *Harman ex rel. Harman v. Borah*, 756 A.2d
1116, 1122 (Pa. 2000). During the first step of the analysis,

> the appellate court must apply the correct scope of review, based
> on the rationale given by the trial court. There are two possible
> scopes of review to apply when appellate courts are determining
> the propriety of an order granting or denying a new trial. There
> is a narrow scope of review: [w]here the trial court articulates a
> single mistake (or a finite set of mistakes), the appellate court's
> review is limited in scope to the stated reason, and the appellate
> court must review that reason under the appropriate standard.
>
>> [Conversely,] [i]f the trial court leaves open the possibility
>> that reasons additional to those specifically mentioned
>> might warrant a new trial, or orders a new trial "in the
>> interests of justice," the appellate court applies a broad
>> scope of review, examining the entire record for any reason
>> sufficient to justify a new trial.
>
> * * *
>
> The appropriate standard of review also controls this initial layer
> of analysis. If the mistake involved a discretionary act, the
> appellate court will review for an abuse of discretion. If the
> mistake concerned an error of law, the court will scrutinize for
> legal error.

*Id.* at 1122-23 (citations and some quotation marks omitted). If a mistake
has been made at trial, the appellate court "must then determine whether the
trial court abused its discretion in ruling on the request for a new trial." *Id.*
at 1123 (citation omitted).

> When determining whether the trial court abused its discretion,
> the appellate court must confine itself to the [proper] scope of
> review[.] If the trial court has provided specific reasons for its
> ruling on a request for a new trial, and it is clear that the decision
> of the trial court is based exclusively on those reasons, applying a
> narrow scope of review, the appellate court may reverse the trial
> court's decision only if it finds no basis on the record to support
> any of those reasons. As a practical matter, a trial court's
> reference to a finite set of reasons is generally treated as

- 10 -

conclusive proof that it would not have ordered a new trial on any other basis. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record.

*Id.* at 1123-24 (citations and some quotation marks omitted).

We review a trial court ruling on the admission of evidence under an abuse of discretion standard. ***Stumpf v. Nye***, 950 A.2d 1032, 1035-36 (Pa. Super. 2008). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, . . . discretion is abused." ***Id.*** at 1036 (citation omitted).

A motion *in limine* has two purposes:

1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion.

***Commonwealth v. Metzer***, 634 A.2d 228, 232 (Pa. Super. 1993) (citing 75 Am. Jur. 2d §§ 94, 98). A ruling on a motion *in limine* that excludes evidence from trial may be rendered moot where the party that benefited from the ruling opens the door regarding the previously precluded evidence. ***See Commonwealth v. Cannon***, 563 A.2d 918, 922-23 (Pa. Super. 1989).

In *Cannon*, two defendants asserted that the trial court erred in granting the Commonwealth's motion *in limine* regarding a victim's prior fraud conviction. *Id.* at 921. However, because the Commonwealth elicited information regarding the conviction during trial, this Court determined that the defendants' argument was no longer relevant. *Id.* at 922-23.

A curative instruction may preclude the need for a new trial where testimony regarding an issue not for the jury's consideration is followed promptly by a clear cautionary instruction. *See Krysmalksi*, 622 A.2d at 306.

In *Krysmalski*, a reckless driver injured three children who were waiting for their mother at the front of a grocery store. *Id.* at 301. The Krysmalskis brought suit against the driver. *Id.* Prior to trial, Mrs. Krysmalski passed away. *Id.* At trial, one of the children, when asked if there was anything else he wanted to say about the event, stated that he wanted "everybody to know that this helped kill my mother." *Id.* at 306. Immediately after the statement was made and defense counsel objected, the court gave a cautionary instruction that the answer was not one the witness was qualified to give that that it should be totally disregarded by the jury. *Id.* This Court found no abuse of discretion or prejudice warranting a new trial based upon the prompt delivery of a clear cautionary instruction. *Id. But see Poust v. Hylton*, 940 A.2d 380, 387 (Pa. Super. 2007) (holding that where counsel used the word "cocaine" in questioning a witness after the mention of cocaine had been precluded in a ruling on a motion *in limine*, a mistrial was warranted

and "it [was] abundantly clear that no curative instruction could have obliterated the taint of defense counsel's use of the word").

Here, while we agree with Appellant that a motion *in limine* is designed to prevent prejudicial information from reaching the jury, we agree with the trial court that Appellant's statement that the legal aspects of his termination from Geisinger were "muddled" opened the door to permit the jury to hear the outcome of the Geisinger litigation.[5] **See Cannon**, 563 A.2d at 922-23. Thus, we discern no basis to disturb the trial court's determination that it did not commit an abuse of discretion in allowing the testimony regarding the outcome of the Geisinger litigation. **See Harman**, 756 A.2d at 1123.

Even if the trial court abused its discretion in permitting Appellant to testify regarding the outcome of the Geisinger litigation, the decision not to grant the request for a new trial was not an abuse of discretion. The trial court indicated that even if it committed an error in permitting the testimony, it declined to grant a new trial because it provided a clear cautionary instruction. Trial Ct. Op., 1/3/18, at 7. We agree that the trial court's cautionary instruction was specific and timely provided to the jury. **See Krysmalski**, 622 A.2d at 306. Moreover, because Appellant opened the door

_____

[5] As to Appellant's assertion that Appellee's counsel was the first to introduce the Geisinger litigation into the trial during his opening statement, we note that the motion *in limine* sought only to preclude the outcome of the Geisinger litigation, not the fact that litigation occurred. **See** Appellant's Mot. *in Limine*, 9/1/17, at 2, 4-5. Thus, Appellee's counsel did not "taint" the proceedings by mentioning the litigation. **See, e.g.**, **Poust**, 940 A.2d at 387.

to the introduction of the contested testimony, the issue of taint that was present in **Poust** was not present here. **See Poust**, 940 A.2d at 387. Because the record contains support for the specific reasons the trial court relied upon in not granting a new trial, we may not reverse the trial court's decision. **See Harman**, 756 A.2d at 1123.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/18/2018